**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BRUCE N. SAFFRAN, M.D., Ph.D. § <br> § <br> *Plaintiff*, § <br> § Civil Action No. 2:05cv547-TJW <br> v. § <br> § Jury <br> BOSTON SCIENTIFIC CORPORATION, § <br> a Delaware Corporation, § <br> § <br> *Defendant*. § | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO AMEND THE JUDGMENT
TO INCLUDE A RECALCULATION OF THE PREJUDGMENT INTEREST AWARD**

In its opening brief, BSC explained that the Court, in calculating prejudgment interest, appeared to have proceeded as if the entire damages award was due in 2004.[1] (D.I. 183.) BSC submitted a calculation that showed that if one assumes that the entire award was due in 2004 and then applies the commercial paper rate (which is the rate used by the Court) from 2004 to the date of the Judgment, one ends up with a prejudgment interest amount that is almost exactly the same as the one awarded by the Court. (D.I. 183, Exhibit A.) BSC argued that calculating prejudgment interest in this manner would be incorrect because BSC would not have been obligated to pay all the royalties at the beginning of 2004, but rather would have paid the royalties to Dr. Saffran as it made the underlying sales of its Taxus stents. (D.I. 183 at 2.)

In its response, Dr. Saffran argues that the Court's prejudgment interest award could have been based on a proper methodology because (per Dr. Saffran) the Court could have used the

---

[1] BSC does not know how the Court calculated prejudgment interest, but rather has just made an educated guess as to how the Court did so.

prime rate and compounded interest annually. (D.I. 188 at 2.) However, what Dr. Saffran fails to recognize is that, in its Order severing Dr. Saffran's claim for post-trial royalties, the Court specifically stated that it was using the commercial paper rate, not the prime rate, in calculating prejudgment interest:

> The court has rendered a Final Judgment contemporaneous herewith. In that judgment, the Court awarded the plaintiff pre-judgment interest consistent with the average ninety (90) day commercial paper rate, as established by the Federal Reserve Board. The court believes that a rate consistent with the commercial paper rate is appropriate for a case brought pursuant to federal law. ***The court used the commercial paper rates for the time period from January 1, 2004 to the date that judgment was entered to calculate the pre-judgment interest award.***

(D.I. 167 [emphasis added].)

Thus, it is clear that the Court did not use the methodology that Dr. Saffran speculated the Court might have used in calculating prejudgment interest.[2] Dr. Saffran does not appear to disagree with the proposition that, if the Court calculated prejudgment interest by assuming that the entire damages award would be paid to Dr. Saffran in 2004, then prejudgment interest should be recalculated. Accordingly, if the Court calculated the prejudgment interest award by assuming that the entire damages award would be paid to Dr. Saffran in 2004, then that award should be recalculated in the manner proposed by BSC in its opening brief, which would reduce the award to $49,043,183.[3]

---

[2]   Dr. Saffran's calculations show that if the Court had arbitrarily selected an interest rate of 6.58% per year, then it could have arrived at the prejudgment interest figure it awarded. (D.I. 188, Exhibit 1.) However, Dr. Saffran provides no explanation for why the Court would have arbitrarily selected an interest rate of 6.58% per year in calculating prejudgment interest.

[3]   In its opening brief, BSC demonstrated that if the commercial paper rate is applied, and if one assumed that Dr. Saffran would have received royalties on a quarterly basis, the prejudgment interest award would be reduced to $49,043,183. (D.I. 183, Exhibit B.) Assuming that royalties would be due on a quarterly basis was appropriate because the license agreement that Dr. Saffran primarily relied on to support his proposed reasonable royalty figure – the Angiotech agreement – required the licensee to pay royalties on a quarterly basis. (2/7/08 pm Tr. 23:21-25 [Ratliff]; DTX 196 at BSX 886118, 886124-25, 886127.) In the exhibit attached to its response, Dr. (continued…)

Respectfully submitted,

BOSTON SCIENTIFIC CORPORATION
By its attorneys,

March 24, 2008

/s/ Melvin R. Wilcox, III

| | |
|---|---|
| Melissa Smith | Melvin R. Wilcox, III |
| State Bar No. TX 24001351 | State Bar No. TX 21454800 |
| GILLAM & SMITH, LLP | YARBROUGH ♦ WILCOX PLLC |
| 303 S. Washington Avenue | 100 E. Ferguson St., Suite 1015 |
| Marshall, Texas 75670 | Tyler, Texas 75702 |
| Telephone: (903) 934-8450 | Telephone: (903) 595-1133 |
| Facsimile: (903) 934-8257 | Facsimile: (903) 595-0191 |
| E-mail: melissa@gillamsmithlaw.com | E-mail: mrw@yw-lawfirm.com |

Richard L. DeLucia
Elizabeth Gardner
John W. Bateman
Jerry Canada
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288
E-mail: rdelucia@kenyon.com
E-mail: egardner@kenyon.com
E-mail: jbateman@kenyon.com
E-mail: jcanada@kenyon.com

---

Saffran calculated prejudgment interest by assuming that royalties would be received by Dr. Saffran "throughout the entire year" (D.I. 188, Exhibit 1) which appears to mean that the royalties would be received as they accrued, as opposed to on a quarterly basis. This approach should not be utilized in calculating prejudgment interest because, in the hypothetical negotiation, the parties would have agreed that BSC would pay Dr. Saffran on a quarterly basis, as was done in the Angiotech agreement.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 24th day of March, 2008.

>    */s/ Melvin R. Wilcox, III*
>    MELVIN R. WILCOX, III