IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BRUCE N. SAFFRAN, Ph.D., M.D., <br>     Plaintiff, <br><br> v. <br><br> BOSTON SCIENTIFIC CORPORATION. <br>     Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br> CIVIL ACTION NO. 2-05-CV-547 (TJW) |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

The court DENIES Boston Scientific Corporation's ("BSC") Alternative Motion for a New Trial on Damages (#182).

**II.    Factual Background and Procedural Posture**

The court incorporates by reference its orders denying BSC's Motion for Judgment as a Matter of Law (#180) and BSC's Alternative Motion for a New Trial (#181). Those orders recite the factual background and procedural history of this case, so the court will not reiterate the facts and history of the case.

**III.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 59(a) the court "may, on motion, grant a new trial on all or some of the issues–and to any party . . . after a jury trial for any reason for which a new trial has heretofore been granted in an action at law in federal court . . ." Fed. R. Civ. P. 59(a). The regional circuit law applies to motions for new trials. *See Riverwood Intern. Court v. R.A. Jones & Co., Inc.,* 324 F.3d 1346 (Fed. Cir. 2003). In the Fifth Circuit, "[t]he decision to grant or deny a motion for a new trial is within the discretion of the trial court and will not be disturbed absent an abuse of discretion or a misapprehension of the law." *Prytania Park Hotel, Ltd. v. General Star*

*Indem. Co.*, 179 F.3d 169, 173 (5th Cir. 1999). "Under the law of the Fifth Circuit, two requirements must be met before a new trial will be granted based on an erroneous jury instruction: 'First, the challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.'" *Z4 Technologies, Inc. v. Microsoft Corp.,* 507 F.3d 1340, 1353 (Fed. Cir. 2007)(citing *Hatsell v. Doctor Pepper Bottling Co.,* 207 F.3d 269, 272 (5th Cir. 2000).

**IV.   Issues to be Decided**

BSC asks the court to resolve the following issues:

1. Whether BSC is entitled to a new trial on damages if BSC's motion for judgment as a matter of law ("180") ("JMOL") or if BSC's alternative motion for a new trial (#181) are not granted.

2. Whether the court should order a new trial on damages if Dr. Saffran refuses a remitted damages award of $13,256,982.

**V.   Analysis**

**A.  Great Weight of the Evidence**

BSC asks the court to order a new trial on damages because the damages verdict was against the great weight of the evidence. The crux of BSC's position is that Saffran's damages theory "was largely based on the assumption that the subject matter claimed in the '760 patent *was* a significant invention that is necessary to make a drug-eluting stent." Motion at 4. BSC states that it provided evidence and testimony that more than one hundred companies chose not to license the '760 patent and that Saffran made no significant contributions to the industry.

The court finds that the verdict was not against the great weight of the evidence. Both parties provided evidence and testimony supporting their positions. BSC elicited testimony that Saffran's invention was insignificant to the industry and that more than 100 companies chose not to pay for a license to practice the '760 Patent. Saffran offered testimony that the letters he sent to companies concerning the '760 patent were not licensing offers, but were employment inquiries. Dr. Barry–BSC's corporate representative–testified that BSC had tired to make a drug eluting stent without a polymer layer and that those attempts were unsuccessful. *See* 2/6/2008 A.M. Tr. at 56-57:11. Additionally, Dr. Barry testified that avoiding the systemic release of the paclitaxel drug would allow BSC to avoid having to conduct additional studies to receive FDA approval. *See id.* at 24:19-25:20. Saffran also offered testimony and evidence that the Taxus Stents were high margin products, that his invention helped prevent the release of the paclitaxel drug into the blood stream, and that the paclitaxel delivery–the release kinetics and the directional delivery toward the damaged tissue–was a critical aspect of the Taxus Stents. *See e.g.,* 2//6/2008 A.M. Tr. at 56-57, 116:11-117:20, 118:23-120:12, 121:2-14; *see also* 2/6/2008 P.M. Tr. 69:13-24.

Both sides presented evidence supporting their positions. The jury found Saffran's evidence more credible and the court may not supplant its judgment for the jury's verdict where the evidence in the record can support the jury's verdict. Consequently, the court rejects BSC's argument.

### B. Additional Reasons

BSC raises six "additional reasons" why the court should grant the Motion. Some of these six "additional reasons" are arguments that BSC raised in the Motion for Judgment as a Matter of Law (#180) and the Alternative Motion for a New Trial (#181). The court rejected those arguments in the orders denying BSC's motions, which are incorporated by reference into this order.

### i) claim scope

BSC once again argues that the court did not properly instruct the jury as to the appropriate scope of the Asserted Claims. The court rejects this argument for the reasons stated in the previous orders.

### ii) prior art

BSC argues that the court improperly precluded it from presenting belatedly and inadequately disclosed prior art to the jury. The court rejects this argument for the reasons stated in the previous orders.

### iii) Angiotech license agreement

BSC argues that the court improperly "prevented [BSC] from asking Dr. Saffran's experts about the subject matter of the patents that BSC licensed in the Angiotech license agreement (the prior art Hunter patents), which is the agreement that Dr. Saffran relied on heavily to support his proffered reasonable royalty rate and thus was also prevented from asking Dr. Saffran's experts to compare the relative value of the Hunter patents with the '760 patent." Motion at 5. Once again, BSC misrepresents the record. The court prevented BSC's counsel from turning Saffran's damages expert, Mr. Ratliff, into a technical expert and a vehicle to "back door" testimony about the prior art that BSC failed to disclose in its invalidity contentions.

BSC's counsel explained to the court at a bench conference (that occurred while counsel cross-examined Mr. Ratliff) that he was trying to establish:

> . . . the scope and what Angiotech provided to Boston Scientific, which their expert has in his expert reports, paragraphs, discussing this patent saying how this patent doesn't teach certain things and didn't provide Boston Scientific with certain technology. The only thing I wanted to talk about is this patent conferred the ability to Boston Scientific to spray coat a stent with paclitaxel, with polymers, and talk to

4

> this damages expert witness and ask him, if Angiotech has already provided that, how can he equate what Dr. Saffran has as being on equal footing.

2/7/2008 A.M. Tr. at 36:16-37:1.

The court noted that BSC's questioning required substantive technical analysis–an area that Mr. Ratliff's direct examination did not address. Moreover, BSC's violation of the court's pretrial order (that the scope of the cross-examination was limited to the scope of the direct examination) prompted the court to issue the following warning:

> When I granted these motions *in limine,* all I asked you to do in pretrial, and again on Monday afternoon, was to tell you not to go in and violate the terms of the order . . . . If you think you've got a reason that I should reconsider it, what you need to do is first approach the Bench. . . [the] first thing you [BSC] do is violate the motion *in limine* and then require [opposing] counsel to say "let's approach." You do just the opposite of what I asked you to do. I do not understand why you will not take that instruction. I told you at pretrial that the rulings were not definitive. I would reconsider any one if you would just approach the Bench first. But you have continuously throughout this case chosen to violate the motion *in limine* and then try to convince me that it's okay. So you violate two orders, I do not understand it. I will let you ask him the one–you've asked him this question whether he considers manufacturing of stent coating.

*Id.* at 37:11-38:4.

During his direct examination, Mr. Ratliff testified that the Angiotech license "related, as you heard in the video clips, to the use of paclitaxel as a coating on the stents." 2/6/2008 P.M. Tr. at 105:8-10. Mr. Ratliff never testified about the substantive technical scope of the Hunter patents on direct.

BSC's counsel tried to use Mr. Ratliff as a vehicle for addressing the substance of the prior art, which was improper. BSC complains that Saffran did not elicit testimony from its technical experts concerning the Hunter patents, so it had to obtain that testimony from Mr. Ratliff and the

court committed error by not allowing BSC to do that in light of the scope of Saffran's experts' technical testimony. *See* Motion at 6. But BSC bore the burden of proof on invalidity and BSC's failure to timely disclose expert testimony of its own on the technical aspects of the Hunter patents is what prevented it from developing this type of proof. The court rejects BSC's position.

### iv) willfulness

BSC argues that it was prejudiced because the court granted its motion for JMOL that BSC did not willfully infringe the '760 patent at the close of the plaintiff's case. Its argument is that Saffran was allowed to offer evidence that BSC willfully infringed the '760 patent, but that BSC could not rebut that testimony since the court granted BSC's motion for JMOL and that this testimony was harmful to BSC in the eyes of the jury. This argument makes up in creativity what it lacks in merit. BSC makes no allegation that the court precluded it from offering rebuttal testimony or evidence. BSC alleges that the court committed error by not including BSC's proposed curative instruction in the court's final instructions to the jury. However, BSC never raised that objection to the court's jury instructions at trial. Consequently, BSC waived its objection.

### v) Dr. Goldberg's testimony

BSC argues that Dr. Goldberg's deposition testimony in which he claimed to have told Dr. Saffran that he (Dr. Saffran) needed to protect himself to make sure that "the little guy wasn't taken advantage of" by big companies when suggesting to Saffran that he should obtain protection for his intellectual property. The court does not believe that Dr. Goldberg's comment is unfairly prejudicial to BSC. Moreover, at jury selection, counsel for BSC asked the members of the panel whether they had sympathy for Saffran since he was in a lawsuit opposite a big company. No juror said yes.

### vi) method claims

BSC argues, without providing any analysis, that it is entitled to a new trial because Saffran provided "no proof at trial regarding the portion of the Taxus Stents that are [sic] actually used in a method covered by the asserted claims versus those that are used in a non-infringing manner." Motion at 6. The court rejects this argument for the reasons given in its previous orders denying BSC's other post-trial motions.

### iv) court comments

BSC argues that it was prejudiced because the court instructed the jury that BSC's counsel violated its orders. For the reasons discussed in the court's orders denying BSC's other post-trial motions, the court rejects this argument.

### C.    Remittitur

BSC asks the court to remit the damages award to $13,256,982 and to give Saffran the option of accepting this reduced amount or to grant a new trial. The court may only order a remittitur where the jury's verdict is excessive to the amount supported by the record. The court DENIES this request. Both sides presented evidence to the jury concerning damages. The jury found Saffran's evidence more credible and the court finds that the jury's award is supported by the evidence in the record.

## VI   CONCLUSION

For the foregoing reasons, the court DENIES BSC's Alternative Motion for a New Trial on Damages. The court finds that evidence in the record supports the jury's findings with respect to the issues raised in the Motion. BSC offered no persuasive arguments for the court to grant a new trial.

SIGNED this  9th  day of July, 2008.

                                                                                           T. JOHN WARD  
                                                                                           UNITED STATES DISTRICT JUDGE