**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| BRUCE N. SAFFRAN, Ph.D., M.D., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2-05-CV-547 (TJW) |
| | § | |
| BOSTON SCIENTIFIC CORPORATION. | § | |
|     Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

The court DENIES Boston Scientific Corporation's ("BSC") Alternative Motion for a New Trial on All Issues (#181) (the "Motion") for the following reasons:

**I.    Facts and Procedural Background.**

Bruce N. Saffran, Ph.D., M.D., ("Saffran") filed this suit on December 16, 2005. Pursuant to the Local Rules, BSC filed its Invalidity Contentions on December 4, 2006. The parties exchanged their claim construction positions on March 28, 2007 and submitted their joint claim construction and pre-hearing statement to the court on June 15, 2007. The court conducted a claim construction hearing on July 26, 2007. The court issued its claim construction order on September 28, 2007. Pursuant to the docket control order, opening expert witness reports were due on October 23, 2007, technical expert rebuttal reports were due on November 6, 2007, expert deposition discovery closed on December 20, 2007, and the deadline for identifying trial witnesses was November 20, 2007.[1] On November 16, 2007, approximately six weeks before the original date of jury selection, BSC served amended Invalidity Contentions. The new contentions formed the basis

---

[1] The court notes that the parties jointly asked for–and received–extensions for these specific dates.

for Saffran's Motion to Strike the Amended Invalidity Contentions, which the court granted. The order granting Saffran's motion to strike, which the court incorporates by reference, excluded arguments and evidence disclosed *for the first time* in BSC's amended invalidity contentions. It did not strike BSC's invalidity or obviousness defenses or preclude BSC from presenting evidence and arguments disclosed in its original contentions.

The court conducted a pre-trial hearing on January 30, 2008 at which the court issued warnings to both sides about the gravity with which the court treats violations of its orders, particularly its orders *in limine*. This warning included a stern admonition that the court would instruct the jury of the offending party's failure to abide by the court's orders. The court notified both parties at the pre-trial hearing (and also at trial) that its rulings on the parties' motions *in limine* were not definitive rulings on the admissibility of evidence. Rather, the court instructed the parties to approach the bench before delving into subject matter about which the court granted a party's motion *in limine* to obtain a final definitive ruling on the evidence.

Before trial, the court resolved a dispute between the parties related to expert reports. The court ruled that the parties' experts may not predicate their opinions on the experts' constructions of claim terms that the court did not construe as that would violate the court's *Markman* Order. *See Markman* Order. The court emphasizes that *both* parties were precluded from contradicting the court's *Markman* Order. Saffran's expert, Dr. Freeman, included opinions predicated on his constructions of unconstrued claim terms as well as opinions that were not. BSC's expert, Dr. Hopfenberg, chose to offer only opinions predicated on his constructions of unconstrued claim terms.

At trial, BSC repeatedly violated the court's orders *in limine* despite repeated warnings from the court. In an effort to guarantee compliance with the court's orders, the court notified the jury that

2

BSC had violated the court's orders. During final jury instructions, the court instructed the jury that it, not the court, was the sole fact finder in this case and that the jury should not construe any comments to indicate any view of the court as to which party should or should not win the case. This trial began on February 5, 2008. The jury reached a verdict on February 11, 2008. The jury determined that BSC infringed, directly and/or contributorily, claims 1-4, 6-11, 13, and 15-18 (the "Asserted Claims") of United States Patent No. 5,653,760 (the "'760 patent"). The jury did not find any of the Asserted Claims invalid.

## II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 59(a) the court "may, on motion, grant a new trial on all or some of the issues–and to any party . . . after a jury trial for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a). The regional circuit law applies to motions for new trials. *See Riverwood Intern. Court v. R.A. Jones & Co., Inc.,* 324 F.3d 1346 (Fed. Cir. 2003). In the Fifth Circuit, "[t]he decision to grant or deny a motion for a new trial is within the discretion of the trial court and will not be disturbed absent an abuse of discretion or a misapprehension of the law." *Prytania Park Hotel, Ltd. v. General Star Indem. Co.*, 179 F.3d 169, 173 (5th Cir. 1999). "Under the law of the Fifth Circuit, two requirements must be met before a new trial will be granted based on an erroneous jury instruction: 'First, the challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.'" *Z4 Technologies, Inc. v. Microsoft Corp.,* 507 F.3d 1340, 1353 (Fed. Cir. 2007)(citing *Hatsell v. Doctor Pepper Bottling Co.,*

207 F.3d 269, 272 (5th Cir. 2000).

**III.     Issues to be Decided**

BSC asks the court to grant a new trial for the following reasons:

1. The verdict was against the great weight of the evidence.

2. The court's construction of certain terms was incorrect.

3. The court did not construe certain terms.

4. BSC was effectively precluded from presenting testimony about the content of the specification.

5. Dr. Freeman was permitted to testify about the "minimally porous" limitation, while Dr. Hopfenberg was not.

6. The court effectively preluded BSC from making its anticipation and obviousness defenses.

7. The court effectively precluded BSC from presenting testimony concerning the prior art.

8. The court refused BSC's proposed jury instruction regarding failure to satisfy the written description requirement.

9. The court precluded BSC from amending its invalidity contentions.

10  The court made comments to the jury.

**IV.     ARGUMENTS FOR NEW TRIAL**

The court will address each of BSC's arguments for a new trial individually.

   **A.     The verdict was against the great weight of the evidence**.

The court incorporates by reference its order denying BSC's motion for judgment as a matter of law.  The court has carefully inspected the trial record and rejects BSC's argument that the jury verdict was against the great weight of the evidence.

### B.     Means plus function claim terms.

BSC argues that the court incorrectly identified the structure for the terms "the layer having material release means for release of an at least one treating material in a directional manner" and "the layer having material release means for release of an at least one treating material in a unidirectional manner." The court identified the structure as "chemical bonds and linkages." BSC now argues that the structure is "a layer that is impermeable to the treating material that has the treating material initially affixed to the first major surface, but not the second major surface, of the layer." Motion at 2. The court previously rejected this construction. The court again rejects this construction for the reasons set forth in the *Markman* Order (#65) and the order denying BSC's motion for JMOL.

### C.     Unconstrued terms

BSC argues that it is entitled to a new trial because the court failed to construe all of the "disputed terms." The court disagrees with the BSC's characterization of the facts related to claim construction. BSC misrepresented Saffran's position(s) with respect to the claim terms the court did not construe. With only one exception, Saffran argued that the claim terms did not need to be construed. The lone exception was the claim term "minimally porous."

In its order denying BSC's motion for JMOL, the court explained why it did not construe the following claim terms: "flexible fixation device"; "device"; "the layer being capable of being shaped/shaping in three dimensions by manipulation by human hands"; "first major surface"; "second major surface"; "adapted to be placed adjacent to a/the damaged tissue"; "the device being flexible by manipulation in three dimensions by human hands"; and "the device being capable of restricting/substantially restricting the through passage of at least one type of macromolecule

5

therethrough." The court will not re-state that analysis in this order. However, the court notes that it construed the only technical word ("macromolecule") that appears in this list. The balance of the terms were not technical terms or terms of art such that an extrinsic technical dictionary or source was necessary to understand the meanings of the terms as understood by one of skill in the art. Further, there was no support in the record for further limiting the claim terms–particularly for limiting the claim terms in the manner proposed by BSC.

Claim construction "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ehicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). "[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *02 Micro International Ltd. v. Beyond Innovation Technology Co.* No. 2007-1302 (Fed. Cir. 2008)(slip copy)(emphasis in original).

Additionally, as noted in its order denying BSC's motion for JMOL, the court specifically addressed what BSC repeatedly characterized as a key or fundamental issue in this case–whether an open mesh stent structure fit within the scope of the "minimally porous" limitation. The court held that Saffran did not disclaim an open mesh stent structure in the prosecution history and that an open mesh stent structure fit within the scope of the claims provided that the other limitations are met. Consequently, the court resolved the dispute between the parties as to the ***scope*** of the claims. BSC is not entitled to a new trial on this ground.

### D.     Testimony concerning the content of the specification

BSC argues that it is entitled to a new trial because the court "precluded BSC from comparing the Taxus stents to the preferred embodiments described in the specification of the '760 patent." Motion at 4. This argument does not comport with the facts.

6

BSC mischaracterizes the court's rulings in the Motion.  Specifically, BSC ignores the court's instructions to the parties concerning its rulings on the parties motions *in limine.*  The court informed the parties that its rulings on motions *in limine* were not definitive rulings on the admissibility of evidence.  *See e.g.,* 2/7/2008 A.M. Tr. 37:08-38:04; 2/4/2008 Tr. at 6:1-4.  Now, however, BSC argues that it was precluded from presenting evidence at trial because the court granted certain paragraphs of Saffran's motions *in limine.*  An order granting a motion *in limine* requires the offering party to approach the bench before offering the evidence in order to obtain a ruling on the admissibility of the evidence.  *See U.S. v. Jiminez,* 256 F.3d 330, 342-343 (5th Cir. 2001)(stating that objecting to an *in limine* order excluding testimony or evidence does not relieve a party from making an offer of proof); *see also United States v. Winkle,* 587 F.2d 705, 710 (5th Cir. 1979)(holding that the court "will not even consider the propriety of the decision to exclude the evidence at issue, if no offer of proof was made at trial").

Additionally, the court provided specific warnings to the parties for violations that it considers to be particularly grave.  For example, the court warned that it would take "serious steps" in response to violations of orders granting motions *in limine* if necessary.  *See* 1/30/2008 Tr. at 33:10-22; *see also* 2/5/2008 P.M. Tr. at 91:03-13.  At the pre-trial hearing counsel for both parties indicated that they understood the court's position.  Nevertheless, BSC repeatedly violated the court's orders *in limine* and now argues that it is entitled to a new trial for the corrective steps taken by the court–about which the court specifically and expressly forewarned BSC.  *See id.*

At the pre-trial hearing, the court addressed the issue of comparing the Taxus Stents with the preferred embodiments rather than the claims of the patent within the context of a motion *in limine.*  The court denied Saffran's motion *as a motion in limine* and advised the parties that the court would

provide an instruction to the jury in the event that BSC violated the law and compared *embodiments* to the Taxus Stents rather than the claims. *See* 1/30/2008 Tr. pp. 5-6.

Separate from the court's rulings on the motions *in limine,* the court notes that BSC was allowed to provide evidence of the content of the specification to the jury. BSC elicited substantive testimony concerning the content from the '760 patent specification from Dr. Hoffman, Dr. Jamison, Dr. Freeman, and Dr. Saffran. *See, e.g.,* 2/5/2008 A.M Tr. At 107:22-115:24; 117:13-118:06; 119:07-121:23; 124:03-126:14; 132:12-19; 133:13-134:05; 2/5/2008 P.M. Tr. 23:25-24:20; 99:20-101:4; 2/6/2008 P.M. Tr. 18:02-19:13; 36:13-22; 2/7/08 P.M. Tr. 130:23-131:05; 131:19-132:15; 135:04-11; 137:04-139:09; 143:02-147:15; 2/8/2008 A.M. Tr. 12:04-19:04; 19:21-21:04; 25:18-26:13; 27:08-18; 2/11/2008 Tr. 26:04-33:20; 34:22-36:08; 37:05-39:04; 43:21-23; 46:21-48:16; 49:09-14; 51:05-54:18. In fact, the following conversation took place at a bench conference and counsel for BSC, Mr. Bateman, agreed with the court that BSC had been allowed to elicit testimony concerning the content of the specification:

> **The Court:** Now, I allowed you to go into the specifications specifically. You used that very word, didn't you, Mr. Bateman, with Dr. Hopfenberg?
> **Mr. Bateman:** Yes.

2/11/2008 A.M. Tr. 14:20-24.

The court finds that BSC was allowed to present evidence and testimony to the jury concerning the content of the specification. Accordingly, the court rejects BSC's argument.

### E.   Preclusion of Dr. Hopfenberg's testimony concerning the claim term "minimally porous" and BSC's anticipation and obviousness defenses

BSC argues that the court precluded BSC from putting on its anticipation and obviousness defenses with a "number of rulings." *See* Motion at 7. First, BSC notes that the court granted

paragraph 4 of Saffran's first motion *in limine*. As discussed *supra*, a ruling on a motion *in limine* is not a definitive ruling on the underlying evidence. *See, e.g.,* 2/7/2008 A.M. Tr. at 37 ("When I granted these motions in limine, all I asked you to do in pretrial, and again on Monday afternoon, was to tell you not to go in and violate the terms of the order of the motion in limine. . . I do not understand why you will not take that instruction. I told you at pretrial that the rulings were not definitive. . .).

BSC characterizes the record to suggest that the court made a blanket ruling preventing BSC from arguing that if a "claim is broad enough to cover the accused product, then it also covers the prior art." That characterization is incorrect. Dr. Hopfenberg ***never*** provided the proper predicate to show that the Taxus Stents "practiced the prior art." Indeed, Dr. Hopfenberg provided no substantive analysis in making the following conclusion (drawn with respect to the limitation from claim 1 of "a layer of flexible material that is minimally porous to macromolecules"): "if this element is satisfied by the SIBS polymer in the Taxus stents, then it is satisfied by the polyurethane polymer in the drug-eluting stents described in the Lambert prior art references." *See* Claim Chart Attached to Hopfenberg Expert Report (D.I. 76-5). This conclusion is representative of Dr. Hopfenberg's other conclusions drawn with respect to the other claim limitations. Dr. Hopfenberg did not provide any substantive analysis in concluding that the Taxus Stents practice the prior art. Consequently, the court did not allow him to testify that if the jury concludes that the Taxus Stents infringe the '760 Patent, then the patent must be invalid because it also embodies the prior art patents.

### F.     Preclusion of BSC's anticipation and obviousness defenses

BSC argues that the court "effectively" precluded it from presenting evidence related to its

anticipation and obviousness defenses at trial. As the court informed counsel for BSC at trial, this statement is inaccurate.

BSC admits that its ". . . expert's opinions on anticipation and obviousness were all premised on the Taxus stents being covered by the asserted claims." Motion at 8. BSC further argued to the court that its "anticipation and obviousness contentions all required a comparison of the Taxus stents with the prior art (to show that if the claims were broad enough to cover the Taxus stents, then they also cover the prior art)." *Id.* BSC then complains that the court's rulings "effectively prevented BSC from presenting its anticipation and obviousness defenses." *Id.* BSC's argument is absurd.

The court did not choose BSC's trial strategy. BSC chose to base its invalidity case on expert opinions for which the expert did not lay the proper factual predicate as discussed *supra*. The court will not create exceptions to the Federal Rules of Civil Procedure and Evidence because a party's strategic decisions ultimately fail. The central fact is that Dr. Hopfenberg made conclusions that he did not support in his expert report.

In support of its argument, BSC cites to the trial transcript from February 1, 2008 at pp. 15 and 16. This portion of the transcript does not support BSC's argument. In this passage, the court clearly states that it was precluding expert testimony on conclusions made by the experts where they provided no analysis for those conclusions. For example, the court stated that if the expert provided no analysis for the proposition that the accused product practiced the claims, then the court would not allow the expert to offer that testimony. *See* 2/1/2008 Tr. at 16:11-15. BSC's representation of the record on point in its briefing starkly contrasts with the actual record.

Ultimately, BSC made the decision to predicate expert opinions on facts that it chose not to support. The law prohibits the court from allowing an expert to testify to opinions that he does not

support analytically or factually. Accordingly, the court rejects BSC's argument.

### G. Preclusion of Testimony Concerning the Content of the Prior Art

The court incorporates by reference its order striking BSC's amended invalidity contentions (#143). That order explains why the court struck BSC's amended invalidity contentions. As noted in that order, BSC, without excuse, belatedly amended its invalidity disclosures to include multiple prior art references and contentions. BSC's justifications for making these disclosures ultimately could be considered specious and frivolous. The court did not strike BSC's original invalidity contentions. Consequently, the court *never* struck BSC's "prior art" defenses as BSC claims in the motion. Instead, the court enforced its rules. The fact that BSC chose not to make "prior art" defenses at trial reflects a strategic decision by BSC, not the court's rulings. The court made this point clear to BSC's counsel at a bench conference. *See* 2/8/2008 A.M. Tr. 9:9-10:19.

BSC informs the court that "BSC was effectively precluded from presenting any testimony about the prior art." Once again, BSC misstates the record. The court precluded BSC from belatedly amending its invalidity contentions. BSC was allowed to present evidence and elicit testimony related to its original invalidity contentions. In sum, BSC chose to amend its invalidity contentions to disclose a significant amount of prior art and add new theories less than two months from trial and long after expert reports were due. BSC argued that the court's claim constructions mandated its amendment, but that argument was woefully unsupported. For example, BSC alleged surprise because of the court's construction of "small molecules." Apparently, BSC was surprised that the court adopted the parties' agreed construction for that term.

The court repeatedly told BSC that it was entitled to present evidence in accord with what was "in your invalidity contentions originally and as supported by the expert report." *See, e.g.,*

2/8/2008 Tr. 9:06-11:01. BSC made the strategic decision to elicit no testimony from its expert witnesses on subjects it properly disclosed; the court *never* precluded BSC from doing so. The court rejects BSC's request for a new trial on this issue.

BSC also asks for a new trial because the court "erroneously" prevented BSC from asking its fact witnesses about the prior art because the court limited the scope of cross-examination to the scope of direct examination, and because the court precluded BSC from asking Saffran's infringement experts about the prior art. *See* Motion at 9. BSC provides no legal support for the proposition that the court erred on the following bases: (a) precluding BSC from eliciting expert testimony from fact witnesses who drafted no expert reports; (b) limiting the scope of cross-examination to the scope of direct examination; and (c) precluding the parties from asking infringement witnesses about invalidity and asking invalidity witnesses about infringement during the respective phases of the trial. As such, the court rejects these ancillary arguments.

### H. Jury Instruction

BSC argues that it is entitled to a new trial because the court refused to give a jury instruction proffered by BSC. The proposed instruction is:

> a claim is invalid for failure to satisfy the written description requirement when it is broader than the invention described in the specification

The court instructed the jury as follows:

> . . .Boston Scientific also contends that the patent does not contain an adequate written description of the claimed invention. The purpose of this written description requirement is to make sure that a patent describes the technology that it seeks to claim as an invention and to demonstrate the inventor was in possession of the invention at the time of the application [sic] the patent was filed, even though the claims may have been changed or new claims added during the prosecution of the application.

> The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the in [sic] invention as claimed, even though the description may not use the exact words found in the claim.
>
> It is not necessary that each and every aspect of the claim be discussed as long as a person of ordinary skill will understand that the missing aspect is necessarily implied in the patent application as originally filed.  If you find by clear and convincing evidence that the patent does not contain an adequate written description of the claimed invention, then you should render a verdict for the defendant.

2/77/2008 Tr, at 137-198.

The court's instructions to the jury were correct statements of the law.  A jury verdict will be reversed due to an improper jury instruction only where the charge as a whole leaves a "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *FDIC v. Henderson,* 61 F.3d 421 (5th Cir. 1995).

Interestingly, BSC argues that the court's jury instruction was prejudicial because BSC's proposed instruction "was relevant to the argument BSC was making–namely, that the claims were broader than the invention described in the specification."  Motion at 10.  Moreover, BSC informs the court that its instruction was misleading because it focused on the "irrelevant requirement" that each element recited in a claim have support in the specification.  *Id.*  The court recognizes that BSC would like the court to phrase the jury instructions in a manner most favorable to its argument.  The court also presumes that Saffran would like the same treatment.  The court's task is to provide instructions to the jury that are neutral and that accurately state the law.  The court does not agree with BSC that the jury was improperly guided in its deliberations. The court gave a thorough, legally correct, and neutral instruction.

### I. Amended Invalidity Contentions

13

BSC argues that it is entitled to a new trial because the court struck its amended invalidity contentions. The court rejects this argument for the reasons set forth in its January 28, 2008 Order striking BSC's amended invalidity contentions (#143).[2]

### J.     The Court's Comments to the Jury

BSC believes that it is entitled to a new trial because the court made prejudicial comments to the jury concerning BSC's trial misconduct. The court rejects this argument. The court has never had counsel so recklessly disregard its orders before this trial. The court repeatedly warned BSC against violating its orders, but counsel for BSC paid little, if any, heed to the court's instructions and warnings.

"The judge presiding over a trial has a responsibility to conduct an orderly trial." *Dartez v. Fibreboard Corp.,* 765 F.2d 456 (5th Cir. 1985). "[T]his court observed that 'a district judge has broad discretion in managing his docket, including trial procedure and the conduct of the trial.' This discretion extends to commenting on the evidence, questioning witnesses to clarify facts or even elicit facts not yet presented, and moving along the trial by means of interruptions and the imposition of time limits on counsel." *U.S. v. Gray,* 105 F.3d 956, 964 (5th Cir. 1997). "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." *Herron v. Southern Pac. Co.,* 283 U.S. 91, 95 (1931).

The court issued the following admonition to *both* parties with respect to motions in limine:

---

[2]BSC, without leave of the court, incorporated by reference its motion for leave to amend its invalidity contentions just as it did with multiple motions in BSC's motion for JMOL. The court once again notes that this effectively eliminates the court's page limit restrictions and leaves the court with no guidance as to the specific arguments BSC incorporates into the Motion.

> when they are violated. . . my instruction is going to be considerably more than, 'counsel, don't do that anymore," generally speaking. Sometimes, I've had the unfortunate experience of taking real serious steps, and, hopefully, I won't have to do that, but I'm forewarning you that's my attitude. So forewarned is usually forearmed.

1/30/2008 Tr. at 33:15-22.

The court attempted to avoid instructing the jury after BSC's counsel had violated the court's orders during the trial. Instead of instructing the jury about counsel's misconduct, the court issued yet another warning:

> . . .we went over it extensively, that we were going to limit your cross to the scope of direct. He [the witness] expressly said he wasn't expressing an opinion on that. . . .Now, Mr. Delucia, you're beginning to try my patience. If you continue to try my patience, I'm going to start instructing the jury about some things . . . that's going to be very disadvantageous to your client. . . .And, you know, you're here on pro hoc [sic] vice. If you think I'm going to let you just run over this Court's rules without penalty - - Mr. Canada, you better get ready, you and Mrs. Gardner because if he continues, he is not going to continue as counsel in this case. And I'm not warning you again.

2/5/2008 P.M. Tr. at 90:22-91:13.

The court exercised as much patience as it could without prejudicing the plaintiff. BSC's disregard for the court's orders became prejudicial to Saffran. The court provided multiple warnings to BSC and told BSC that it would not receive another warning. The court had no choice but to instruct the jury that BSC violated the court's orders to put an end to the misconduct. The court also provided a curative instruction to the jury to ensure that the jury knew that the court did not favor one party over the other:

> Nothing that I may have said or done during the course of this trial is intended to indicate any view of mine as to which party should or should not win this case. As I instructed you previously, you, the jury, you are the sole judge of the credibility of the testimony and the weight to be given the evidence.

2/11/2008 Tr. 143:01-17.

This instruction is similar to the instruction given by the district court in *U.S. v. Lankford.* *See U.S. v. Lankford,* 196 F.3d 563 (5th Cir. 1999). In *Lankford,* the district court questioned witnesses and the defendant alleged that the court erred and did not conduct a constitutionally fair trial. The Fifth Circuit commented on the district court's instruction to the jury in finding that the court conducted a constitutionally fair trial. *See id.*, at 573. The court instructed the jury to prevent future violations and the court gave the jury an instruction to amplify the jury's role. It bears mentions that BSC's misconduct substantially subsided after the court gave the instruction to the jury. For those reasons, the court rejects BSC's argument.

## V. CONCLUSION

For the foregoing reasons, the court DENIES BSC's Motion for a New Trial. BSC repeatedly violated the court's orders warranting an instruction from the court. BSC failed to timely amend its invalidity contentions, tried to elicit improper opinion testimony from fact witnesses, and exceeded the scope of direct examination on cross-examination. BSC made a strategic decision not to present evidence to the jury in its invalidity case. Now, BSC distorts and misrepresents the record and asks the court to grant a new trial.

SIGNED this 9th day of July, 2008.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE